**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

GABRIEL GONZALEZ,
      Plaintiff,

      v.

WATERBURY POLICE DEPT., et al.,
      Defendants.

No. 3:12-cv-478 (SRU)

## Ruling on Motion for Judgment as a Matter of Law

This case arises out of a police "sting" operation conducted by members of the Waterbury Police Department that resulted in a lengthy high-speed chase and ultimately the arrest of Gabriel Gonzalez. Gonzalez alleges that the defendant police officers used excessive force in the course of taking him into custody following the high-speed pursuit. Such conduct, Gonzalez contends, was in violation of state law and 42 U.S.C. § 1983. Following a jury trial that resulted in a mistrial, the defendants renewed their motion for judgment as a matter of law.

For the following reasons, the motion (doc. # 171) is denied.

## I.      Standard of Review

Rule 50(a) of the Federal Rules of Civil Procedure allows for the entry of judgment as a matter of law if a "party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." *See* Fed. R. Civ. P. 50(a). If the court does not grant the motion made under Rule 50(a), "the movant may file a renewed motion for judgment as a matter of law" within 28 days from the entry of judgment or, if the motion concerns a matter not decided by a verdict, within 28 days after discharge of the jury. Fed. R. Civ. P. 50(b). The standard under Rule 50 is

the same as that for summary judgment: A court may not grant a Rule 50 motion unless "the

evidence is such that, without weighing the credibility of the witnesses or otherwise considering

the weight of the evidence, there can be but one conclusion as to the verdict that reasonable

[persons] could have reached." *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 142 (2d Cir.

1998) (citation and internal quotation marks omitted).  Thus, in deciding such a motion, "the

court . . . may not itself weigh the credibility of the witnesses or consider the weight of the

evidence." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir.

1998) (citations omitted).  In making such a determination, the court "must draw all reasonable

inferences in favor of the nonmoving party" and "disregard all evidence favorable to the moving

party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530

U.S. 133, 150–51 (2000).

In short, judgment as a matter of law may only be granted if: "There is such an

overwhelming amount of evidence in favor of the movant that reasonable and fair minded

persons could not arrive at a verdict against it." *Galdieri-Ambrosini*, 136 F.3d at

289 (quoting *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1154

(2d Cir. 1994)) (internal quotation marks omitted); *see also Luciano v. Olsten Corp.*, 110 F.3d

210, 214 (2d Cir. 1997).[1]

## II.    Background

Gabriel Gonzalez filed a complaint against the City of Waterbury and members of the

Waterbury Police Department on March 28, 2012.  Thereafter, he made multiple amendments to

his complaint.  Because Gonzalez's fourth amended complaint was struck for failure to comply

---

[1] Though a typical Rule 50 ruling will evaluate the evidence with respect to the jury's verdict, the instant renewed motion for judgment as a matter of law follows a mistrial in which the jury did not render a verdict.  Accordingly, the only inquiry is whether there was sufficient evidence that a reasonable jury could have reached a verdict in favor of Gonzalez.  *See In re Fosamax Products Liab. Litig.*, 742 F. Supp. 2d 460, 470 (S.D.N.Y. 2010).

with Rule 15, the operative complaint is the third amended complaint, which was filed on April

4, 2014. *See* Doc. # 59.

On May 5, 2015, I granted in part, denied in part, and took under advisement in part, the

defendants' motion for summary judgment. *See* Doc. # 99. On February 29, 2016, I granted the

portion of the motion that I had taken under advisement and dismissed the City of Waterbury

from the case. *See* Docs. # 135, 146.

Beginning on March 14, 2016, I held a jury trial with respect to the claims against the

remaining defendants, Richard Hamel, Jason Lanoie, Maximo Torres, and Timothy Jackson.

The trial concluded on March 18, 2016, when I declared a mistrial because the jury could not

reach a unanimous verdict. Following trial, in accordance with Rule 50(b) of the Federal Rules

of Civil Procedure, the defendants renewed their motion for judgment as a matter of law. The

following is a summary of facts elicited at trial.

In the early hours of August 7, 2010, in Waterbury, Connecticut, the Vice and

Intelligence Division of the Waterbury Police Department was conducting a reverse-sting

operation, headed by Waterbury Police Lieutenant Michael Ponzillo and Sergeant Angon. The

defendants, all Waterbury police officers, were participating in the reverse sting. At

approximately 2:35 a.m., Gonzalez and his cousin, Jacob Perez, interacted with a female

undercover officer posing as a prostitute. Believing that Gonzalez and Perez were attempting to

solicit the officer, police takedown teams approached Gonzalez's vehicle intending to arrest

Gonzalez and place him in custody.

The parties dispute exactly what happened next. For the purposes of the remaining

claims in the case, however, the only pertinent fact is that Gonzalez led police officers on a high-

speed chase from Waterbury to Newington, Connecticut. Once in Newington, Gonzalez drove to

the end of an industrial parking lot where he abandoned his car and began to flee on foot.

Gonzalez jumped over a six or seven foot chain-link fence and landed in an area that the parties

referred to as a "swampy area" or "drainage ditch," located adjacent to a set of railroad tracks.

Some of the officers pursued Gonzalez over the fence and then began looking for him in the

drainage ditch alongside the railroad tracks. Others attempted to find a different access point to

the area in which they believed Gonzalez was located.

There came a point in time when a number of the officers surrounded Gonzalez while he

was hiding—and possibly stuck—in the drainage ditch. There were multiple officers alongside

the fence adjacent to the ditch and there was at least one officer on the other side of the ditch, on

or near the railroad tracks. At that point, according to Gonzalez, the officer on the side of the

railroad tracks instructed the other officers to turn off their flashlights. When Gonzalez turned

around to face the officer located on the railroad-track side of the ditch, Gonzalez saw rocks

flying at him from that direction.

Gonzalez testified that the first rock to hit him struck him in his midsection. The second

rock struck his face. The third and final rock struck him again in the face and rendered him

unconscious. After losing consciousness, Gonzalez testified that he awoke to two officers

punching and kicking him while he was lying face-up on the bed of the railroad tracks. Gonzalez

testified that the same two officers subsequently picked him up from the ground and walked him

to a police cruiser. He was thereafter taken to the police station and then St. Mary's Hospital to

get treatment for his injuries, which included significant facial fractures.

III.    Discussion

Defendants renew their motion for judgment as a matter of law on account of the fact that

Gonzalez has failed to identify any particular defendant who is responsible for the use of

4

excessive force during the course of Gonzalez's seizure and arrest.  Defendants also argue that,

even if Gonzalez could identify which officer participated in what conduct, Gonzalez has failed

to identify which injuries were caused by what conduct.  Gonzalez contends that there were

sufficient facts elicited at trial in order to hold the defendants liable under 42 U.S.C. § 1983.

### A.  Individual Liability

It is well established that "personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith,* 21 F.3d

496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.

1991)) (internal quotation marks omitted); *see also Costello v. City of Burlington*, 632 F.3d 41,

49 (2d Cir. 2011).  "Proof of an individual defendant's personal involvement in the alleged

wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983."  *Gaston*

*v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001).

"A police officer is personally involved in the use of excessive force if he either: (1)

directly participates in an assault; or (2) was present during the assault, yet failed to intercede on

behalf of the victim even though he had a reasonable opportunity to do so."  *Jeffreys v. Rossi,*

275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d

549 (2d Cir. 2005) (citing *Ricciuti v. N.Y. City Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)).

#### 1.  *Direct Participation*

A plaintiff seeking to prove that an officer directly participated in the alleged excessive

force need not be able to positively identify, at trial, which defendant took what particular action.

*See Medina v. Donaldson*, 2014 WL 1010951, at *7 (E.D.N.Y. Mar. 14, 2014); *Rutherford v.*

*Berkeley*, 780 F.2d 1444,1448 (9th Cir. 1986), *abrogated on other grounds by Graham v.*

*Connor*, 490 U.S. 386 (1989).  Rather, a jury may use a combination of factors—direct

testimony, cross examination, and circumstantial evidence—to infer that a particular defendant took a particular action.  *See id.*

A court should not focus on a lack of direct testimony when there is ample circumstantial evidence on which a jury is entitled to rely.  *See Medina*, 2014 WL 1010951, at *7 (citing *Concerned Area Residents for Env't v. Southview Farm,* 34 F.3d 114, 119 (2d Cir. 1994)). "Absent direct evidence, a jury may still find for the plaintiff on a theory of direct participation if there is sufficient circumstantial evidence from which the trier of fact could make reasonable conclusions concerning who, if anyone, struck [the plaintiff]."  *Id.* (internal quotation marks and citation omitted) (alterations in original).

For example, circumstantial evidence involving a defendant's height and location relative to the plaintiff was sufficient to infer that he was the officer who struck the plaintiff.  *Lasher v. City of Schenectady*, 2004 WL 1732006, at *6–7 (N.D.N.Y. Aug. 3, 2004).  Similarly, testimony from the officers that they were in the immediate vicinity of the arrest, coupled with testimony by the plaintiff that he saw the faces of each of the defendants while he was being punched and kicked, was sufficient for a reasonable jury to conclude that the officers were liable even though the plaintiff could not identify which officers struck him.  *Rutherford*, 780 F.2d. at 1448.  In reaching its conclusion, a jury is permitted to use the testimony of multiple individuals to infer that particular officers were liable for the alleged conduct, even if the plaintiff cannot tie a particular officer to a particular action.  *See Jones v. Williams*, 297 F.3d 930, 936 (9th Cir. 2002).

2.  *Failure to Intervene*

Even if the evidence is insufficient to establish that a particular defendant directly participated in the use of excessive force, a plaintiff may still prove personal liability under section 1983 by showing that the defendants "permitted fellow officers to violate a suspect's

clearly established statutory or constitutional rights." *Zainc v. City of Waterbury*, 603 F. Supp. 2d 368, 384 (D. Conn. 2009) (quoting *Ricciuti*, 124 F.3d at 129). "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988); *Braswell v. Corley*, 2015 WL 575145, at *13 (D. Conn. Feb. 11, 2015). "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

"A plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene." *Jeffreys v. Rossi*, 275 F. Supp. 2d at 474; *see also Corley v. Shahid*, 89 F. Supp. 3d 518, 524 (E.D.N.Y. 2015) ("It would be too much to require a citizen subjected to a police attack to separately identify the role of each defendant—he is, after all, under attack."); *Estate of Rayln George v. Batista*, 2011 WL 1322533, at *13 (D. Conn. Mar. 31, 2011); *Campbell v. City of New York*, 2010 WL 2720589, at *9 (S.D.N.Y. June 30, 2010); *Vesterhalt v. City of New York*, 667 F. Supp. 2d 292, 298 (S.D.N.Y. 2009) (though plaintiff "could not identify who threw her to the floor and held her there with his boot[,]" the defendants' testimony that they were in close proximity of the incident was sufficient "to present a genuine issue of material fact as to whether each of the individual officers was personally involved in using or permitting the use of the alleged excessive force"). The ability to proceed under the alternate theories of direct participation and failure to intervene is especially important "where the acts complained of by the plaintiff, if true, (e.g., mace to the eyes, standing on back, "mushing" face into the ground) are likely to have prevented plaintiff from identifying which of three defendant officers specifically engaged in the bad acts." *See Shankle v. Andreone*, 2009 WL 3111761, at *5 (E.D.N.Y. Sept. 25, 2009).

In *De Michele*, the court held that there was sufficient evidence to hold the defendants

liable when the plaintiff testified that "there were multiple officers around him when he suffered

the blows described above, and that, for part of the time he was beaten, his face was up against a

brick wall, preventing him for seeing which officers were taking what actions." *De Michele v.*

*City of New York*, 2012 WL 4354763, at *17 (S.D.N.Y. Sept. 24, 2012) (internal citations

omitted).  The court emphasized the fact that all of the officers admitted that they were present at

the time of the alleged conduct and the court concluded that, even if not direct participants, they

had the opportunity—and obligation—to intervene.  *Id.*  Similarly, in *Piper v. City of Elmira*, 12

F. Supp. 3d 577 (W.D.N.Y. 2014), the court held that it was "sufficient that plaintiffs have

established that these officers were present during these incidents; they need not establish which

officers used the challenged force and which allegedly failed to intervene."  *Id.* at 597; *see also*

*Skorupski v. Suffolk Cty.*, 652 F. Supp. 690, 694 (E.D.N.Y. 1987) (summary judgment

inappropriate notwithstanding plaintiff's inability to identify which officer struck him when

evidence showed that defendants were present during arrest).

However, in order to proceed under a theory that the defendants either participated in or

failed to intervene in another officer's use of excessive force, a plaintiff must establish, at a

minimum, the particular defendant was in a position to intervene.  *O'Neill*, 839 F.2d at 11; *see*

*also Corley*, 89 F. Supp. 3d at 524.  "Whether an officer had sufficient time to intercede or was

capable of preventing the harm being caused by another officer is an issue of fact for the jury

unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."

*Anderson*, 17 F.3d at 557.

The duration of the alleged use of excessive force and the officer's position at the time of

such use are of primary importance when considering whether an officer was capable of

intervening.  *See O'Neill*, 839 F.2d at 11; *Piper*, 12 F. Supp. 3d at 596.  Often it is impossible for

an officer to have a reasonable opportunity to intervene if the alleged use of force was quick and

isolated.  *See Haralambous v. Hubbs*, 2015 WL 3444328, at *5 (D. Conn. May 28, 2015) (citing

*Jones v. City of Hartford*, 285 F. Supp. 2d 174, 184 (D. Conn. 2003)).  In *Jones*, the court held

that an officer standing on the other side of a car from the victim did not have a realistic

opportunity to intervene when his fellow officer applied "three to five kicks . . . [in] rapid

succession."  *Jones*, 285 F. Supp. 2d at 183; *see also Johnson v. City of N.Y.*, 2008 WL 4450270

at *6 (S.D.N.Y. Sept. 29, 2008) (officer had no reasonable opportunity intervene when alleged

use of force lasted only "a couple of seconds").

Additionally, an officer may not be held liable if there is a dearth of evidence with

respect to whether the officer was in a position to intervene.  *See Piper*, 12 F. Supp. 3d at 596.

There must be evidence of the location of the officer at the time of the use of force in order to

adequately determine whether that officer had the reasonable opportunity to intervene.  *See*

*O'Neill*, 839 F.2d at 11.  In *Piper*, the court held that it was improper to hold a defendant liable

when there was "no evidence . . . as to the location of any of these officers at the scene, much

less evidence that these officers were in a position from which they could have intervened . . . ."

*Piper*, 12 F. Supp. 3d at 596.

When a victim is subject to multiple incidents of abuse, however, the likelihood that an

officer would be able to intervene is greater.  *O'Neill*, 839 F.2d at 11 ("Having seen the victim

beaten, he was alerted to the need to protect [the victim] from further abuse.").  In *O'Neill*, the

court refused to hold an officer liable for "three blows [that] were struck in rapid succession

[because the officer] had no realistic opportunity to attempt to prevent them."  *Id.*  Nevertheless,

the court held that the officer could be liable for the "subsequent dragging of [the victim] across the floor." *Id.* at 12.

3.  *Facts at Trial*

At trial, Gonzalez testified to two separate instances in which the officers allegedly used excessive force.  Gonzalez testified that, prior to his apprehension, one or more officers threw rocks at him, striking him three separate times.  Second, Gonzalez testified that, after he was apprehended and brought up to the area alongside the railroad tracks, officers punched and kicked him.  Because a defendant will only be liable if he participated in or failed to intervene in the particular conduct at issue, it is necessary to evaluate the two incidents separately.  In doing so, I am mindful that I "must draw all reasonable inferences in favor of the nonmoving party" and "disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 150–51.

a.  Rock Throwing

At trial, Gonzalez testified that he led police officers on a high-speed chase from Waterbury to Newington.  Once in Newington, Gonzalez drove to the end of an industrial parking lot where he abandoned his car and began to flee on foot.  He jumped over a chain-link fence at the edge of the parking lot and landed in a drainage ditch that was sandwiched between the parking lot and a set of railroad tracks.  The officers pursued Gonzalez over the fence and then began looking for him in the ditch alongside the railroad tracks.

Gonzalez testified that there came a point in time when a number of the officers surrounded him while he was hiding—and possibly stuck—in the drainage ditch.  Gonzalez testified that there were multiple officers alongside the fence adjacent to the ditch and there was at least one officer on the other side of the ditch, by the railroad tracks.  Gabriel Gonzalez Test.

10

at 56 (doc. # 163).  The officer on the side of the railroad tracks then instructed the other officers

to turn off their flashlights, and they complied.[2]  *Id.*; *see also* Gonzalez Test. at 76, 77.  When

Gonzalez turned around to face the officer located on the side of the railroad tracks, Gonzalez

noticed that rocks were flying at him from that direction.  *Id.*  Gonzalez testified that he was sure

that the rocks were coming at him from the railroad-track side of the drainage ditch.  Gonzalez

Test. at 78, 90.

Eventually, one of the rocks struck Gonzalez in the waist.  At that point, Gonzalez

testified that he told the officers, "I surrender."  Gonzalez Test. at 56.  Yet, according to

Gonzalez, "they kept throwing rocks."  *Id.*  Then, a second rock struck him in the face.  *Id.*  At

that point, Gonzalez testified that he "kept screaming, and they kept mocking and laughing,

screaming, 'Oh, that got to hurt.'"  *Id.* at 57.  Finally, a third and final rock struck Gonzalez in

the face, rendering him unconscious.  *Id.*  Gonzalez testified that, during these events, the

participating officers were within a few feet from Gonzalez on both sides of the drainage ditch.

The defendants argue that they cannot be held liable for any alleged rock throwing

because it is impossible to identify which, if any, of the officers participated in the conduct.

Though defendants are correct that Gonzalez does not identify a particular defendant as the

culprit, the jury is free to rely on the defendants' testimony regarding their respective positions in

order to infer that a certain officer was culpable and others were liable for failure to intervene.

Testimony from all of the officers involved corroborates the fact that there were only

three officers in the immediate vicinity of Gonzalez at the time of his apprehension.  Jason

Lanoie Test. at 98-99, 107-08 (doc. # 164); Richard Hamel Test. at 162 (doc. # 165).  Though

Torres did not testify about his whereabouts at the scene of the arrest, Lanoie testified that he and

---

[2] Though not dispositive, the fact that the officers turned off their flashlights in response to the request weighs in favor of holding the participating officers responsible notwithstanding the fact that plaintiff was unable to identify them.  *Shankle*, 2009 WL 3111761, at *5.

Torres were on the parking-lot side of the drainage ditch and Hamel was on the railroad-track side.  Lanoie Test. at 98-99.  Hamel's testimony corroborates the fact that he was on the railroad-track side of the ditch and Lanoie and Torres were on the opposite side.  Hamel Test. at 162.

During that time, it is not clear where the other officers, Jackson and Juan Rivera, were located.  Jackson testified that, immediately before Gonzalez was apprehended, he was a "ways" down the railroad track.  Timothy Jackson Test. at 86, 88, 105-06.  Jackson gave uncontroverted testimony that he and Rivera did not jump the fence, but rather drove their vehicle down to a bridge where they were able to access the railroad tracks without having to jump over a fence. *Id.* at 84, 86.  Though it is not clear exactly where Jackson and Rivera were located at the time of the alleged rock-throwing, Jackson corroborated the other officers' testimony that Lanoie, Torres, and Hamel were the only officers in the immediate vicinity of Gonzalez prior to Gonzalez's apprehension.  *Id.* at 107-08.[3]

A jury could reasonably conclude that those three officers were the only ones close enough to throw the rocks that hit Gonzalez.  Based on Gonzalez's testimony, a jury could also reasonable conclude that the rocks were thrown by an officer located on the railroad-track side of the ditch.  Because the evidence showed that Hamel was the only officer in the immediate vicinity of Gonzalez who was located on the railroad-track side of the ditch, a jury could reasonably conclude that Hamel was the person responsible for throwing the rocks.[4]

---

[3] Rivera is not a defendant in the case.  His location is only relevant in order to permit a reasonable jury to reject any theory that he, not Hamel, was responsible for throwing the rocks.  Because the testimony is unclear with respect to his location, it is not unreasonable for a jury to conclude that Hamel, not Rivera, was responsible for throwing the rocks.

[4] The fact that Gonzalez testified that "they was throwing objects . . ." does not prevent a jury from concluding, based on other testimony, that the rocks came from a single individual.  A jury could reasonably conclude that Gonzalez's testimony indicates solely that he was aware of the fact that multiple rocks were flying in his direction, even though he might not have known how many officers were throwing the rocks.  In fact, contrary to defendants' suggestion, no portion of Gonzalez's testimony indicates the number of officers responsible for throwing the rocks.

With respect to Lanoie and Torres, a reasonable jury could conclude that they were in a

position from which they could intervene.  First, the duration of the conduct was not brief.

Gonzalez testified that multiple rocks were thrown at him and, during the incident, he pleaded

with the officers to stop.  Gonzalez Test. at 57.  Gonzalez also testified that the officers taunted

him as rocks were being thrown at him.  *Id.*  Officers in a position to taunt a victim are—at least

temporally—in a position to prevent additional harm.  Even if Torres and Lanoie could not have

stopped the first rock from being thrown, a jury could reasonably find that they had ample time

to take action to prevent more rocks from being thrown.  Because multiple rocks hit Gonzalez, a

jury could reasonably find that at least some of the harm could have been avoided had the

witnessing officers taken action.

Physically speaking, Lanoie and Torres were in a position from which they were able to

intervene.  Though it was dark out, there was testimony that it was light enough to see

individuals who were present.  Jackson Test. at 108.  Furthermore, Hamel testified that he was

communicating with Lanoie and Torres.  Hamel Test. at 168.  Surely Lanoie and Torres, having

seen rocks thrown, could have communicated to Hamel that such conduct needed to stop.  It is

also not out of the realm of possibility that Lanoie and Torres, given the testimony that they were

approximately 20 feet from the other side of the ditch, *see* Hamel Test. at 166, could have

physically gone to the other side of the ditch and prevented additional rocks from being thrown.

Accordingly, there was sufficient evidence for a reasonable jury to find that Lanoie and Torres

were liable for failing to intervene to prevent rocks from being thrown at Gonzalez.

On the other hand, though not argued by the parties, it would not be reasonable for a jury

to find that Jackson was in a position from which he could intervene to prevent rocks from being

thrown.  Though it is unclear exactly where Jackson was located, there was no testimony that

placed him in close proximity to Gonzalez when the rocks were allegedly thrown.  Jackson

testified, and there is no evidence to dispute it, that he was a "ways" down the track from

Gonzalez immediately prior to Gonzalez's apprehension.  Jackson Test. at 86, 88, 105-06.  The

fact that Gonzalez's counsel attempted to dispute Jackson's testimony on cross examination does

not permit a contrary conclusion.  *See Jeffreys*, 275 F. Supp. 2d at 478 (citing *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)) ("[Plaintiff] cannot prove his direct case solely by

poking holes in the officers' testimony.").  All testimony leads to the conclusion that Hamel,

Lanoie, and Torres were the only officers within close proximity to Gonzalez at the time that any

rocks could have been thrown.  Accordingly, Jackson may not be held liable for either direct

participation in or failure to intervene in the rock-throwing incident.

       b.   Punching and Kicking

Gonzalez testified that, after losing consciousness, he awoke to two officers punching and

kicking him while he was lying face-up on the bed of the railroad tracks.  Gonzalez Test. at 82-

83.  Those same two officers, Gonzalez testified, picked him up from the ground following the

beating and walked him to a police cruiser.  Gonzalez Test. at 83, 89.  Specifically, Gonzalez

testified, "The two police officers that was beating me up, they grabbed me and they took me to

the cruiser."  Gonzalez Test. at 89.

Though Gonzalez is unable to identify the particular officers involved in the punching

and kicking, the jury is permitted to use other testimony to infer the identity of those officers.  If

the jury is able to determine the identity of the two officers who took Gonzalez to the police

cruiser, it would be able to reasonably find that those two officers were also responsible for

punching and kicking Gonzalez while he was lying on the bed of the railroad tracks.

At trial, the defendants testified that non-party officers were responsible for bringing

Gonzalez from the railroad tracks to the police cruiser.  Officer Christopher Shea corroborated

that testimony when he testified that he was the only officer involved in the transportation of

Gonzalez to the cruiser.  Christopher Shea Test. at 10 (doc. # 183).  However, a jury is not

required to believe the testimony of the defendants and Officer Shea.

On cross examination, Hamel admitted that he had given testimony in a prior criminal

case that conflicted with his current trial testimony.  Hamel Test. at 173, 176.  Hamel also

admitted that, at the prior trial, he testified that he and Jackson were the ones who took

possession of Gonzalez and walked him to the police cruiser.  *Id.*  Though he disputes the

accuracy of his prior testimony, the jury could reasonably find that the testimony Hamel gave at

the 2011 criminal trial was more accurate than his testimony at the 2016 civil trial.  Such a

conclusion is corroborated by the fact that, at the current trial, Jackson testified that he came

running to assist Hamel after Hamel went into the drainage ditch to take Gonzalez into custody.

Jackson Test. at 107.  Upon finding that Hamel and Jackson were the ones who took Gonzalez

from the scene of the arrest to the police cruiser, a jury could reasonably find, based on

Gonzalez's testimony, that Hamel and Jackson were the ones responsible for punching and

kicking Gonzalez while he was lying on the bed of the railroad tracks.

Moreover, because there is testimony that Lanoie and Torres were in the close vicinity of

Hamel when Hamel took Gonzales into custody, there is also enough evidence that they were in

a position to intervene to prevent the alleged punching and kicking of Gonzalez.  Though there

was no specific testimony regarding the alleged duration of the punching and kicking, a jury

could reasonably infer (based on Gonzalez's testimony that they "kept punching me") that the

incident was not so brief as to make it impossible for an officer in the immediate vicinity to

15

intervene.  Accordingly, it would not have been unreasonable for a jury to conclude that Lanoie and Torres were liable for failure to intervene in the punching/kicking incident.

B.  Causation

In order to succeed on an excessive force claim, Gonzalez must show that he was injured as a result of the use of excessive force.  *See Buie v. City of New York*, 2015 WL 6620230, at \*8 (E.D.N.Y. Oct. 30, 2015).  However, the threshold of injury that Gonzalez is required to show is low.  *See id.* (collecting cases).  Moreover, if Gonzalez establishes that multiple defendants are liable for a particular use of excessive force, it is not his burden to establish which particular officer is liable for which harm.  *See Northington v. Marin*, 102 F.3d 1564, 1568-69 (10th Cir. 1996) (when the conduct of multiple defendants is tortious but only one caused the harm, it is the defendant's burden to prove that he was not the but-for cause of the harm).

In the instant case, there was direct testimony by Gonzalez that, among other things, he suffered a serious injury to his eye as a result of being struck by one of the rocks that was thrown at him.  For reasons already stated, a reasonable jury could find that Hamel was the only person in a position to throw such rocks, and thus would be the individual responsible for causing Gonzalez's eye injury.  Even if the jury were to determine that more than one officer was responsible for throwing the rocks, Gonzalez need not put on evidence showing which officer was responsible for the successful hit.  *See id.* at 1568-69.

Furthermore, Gonzalez alleges that he was violently punched and kicked after he was taken into custody.  Though it is possible that the expert medical testimony did not sufficiently tie that conduct to any of Gonzalez's documented injuries, it was not Gonzalez's obligation to do so.  To survive a Rule 50 motion, Gonzalez need only establish injury sufficient to justify an award of nominal damages.  *See Buie*, 2015 WL 6620230, at \*8.  Gonzalez's testimony that he

was harmed by the punching and kicking was sufficient for a reasonable jury to conclude that the punching and kicking caused legally cognizable injury.  *See id.* (holding that physical evidence of injury was not required to establish that the plaintiff was injured as a result of the use of force).  Gonzalez testified that his entire body was in pain as a result of the officers' conduct and that he still gets nightmares as a result of, among other things, getting punched and kicked.  Gonzalez Test. at 57, 85, 107.

Gonzalez does not need to prove which officers punched and which officers kicked him, so long as Gonzalez has put forward sufficient evidence for a reasonable jury to conclude that specific officers were involved in the punching and kicking.  *See Laster v. Mancini*, 2013 WL 5405468, at *29 (S.D.N.Y. Sept. 25, 2013) (fact that officer was "physically involved" in restraining plaintiff "gives rise to a plausible inference that he was the one who caused the injury to the plaintiff").  As already discussed, Gonzalez has put forward sufficient evidence for a reasonable jury to find that Jackson and Hamel were the two officers directly responsible for punching and kicking him.  Gonzalez is not required to show which of his injuries came from which officer in order to state a claim against each individually.  By being joint participants in the alleged harm, the burden is on Jackson and Hamel to prove that the other was responsible for the claimed injuries.  *See Northington*, 102 F.3d. at 1568-69.

## IV.   Conclusion

For the foregoing reasons, the defendants' Rule 50(b) motion (doc. # 171) is denied. There was sufficient evidence from which a jury could have reasonably found that Hamel was the individual who threw rocks at Gonzalez, and that Lanoie and Torres were in a position from which they could intervene.  The jury could also have reasonably found that Hamel and Jackson were responsible for punching and kicking Gonzalez while he was lying on the bed of the

17

railroad tracks, and that Lanoie and Torres were responsible for failing to intervene.[5]  This case

will be re-tried on all claims against all defendants, except that the rock-throwing claim is

dismissed against Jackson.

       So ordered.

Dated at Bridgeport, Connecticut, this 9th day of August 2016.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

[5] Defendants did not put forward any additional reason why they are entitled to judgment as a matter of law on the state law claim.  Because Gonzalez's state law intentional infliction of emotional distress claim is based on the same facts as his section 1983 claim, defendants' motion is denied with respect to that claim as well.